# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| NATIONAL TREASURY EMPLOYEES ) | |
| UNION, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Civil Action No. 05-201 (RMC)** |
| ) | |
| MICHAEL CHERTOFF, ) | |
| SECRETARY, UNITED STATES ) | |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

By Memorandum Opinion and Order issued August 12, 2005, this Court enjoined the

Department of Homeland Security ("DHS") and the Office of Personnel Management ("OPM")

("Agencies") from implementing Subpart E and § 9701.706(k)(6) of Subpart G of the Department

of Homeland Security Human Resources Management System, 5 C.F.R. § 9701 *et seq.*

("Regulations"). *Nat'l Treasury Employees Union v. Chertoff*, No. 05-201 (D.D.C. Aug. 12, 2005)

("Mem. Op."). The Regulations would establish a separate human resources management system

("HR System") at DHS. Pursuant to the Court's invitation,[1] the Agencies have submitted a motion

to alter or amend the judgment of the Court under Federal Rule of Civil Procedure 59(e). They ask

---

[1] "Should the Agencies wish to submit an order that more selectively enjoins Subpart E in a manner otherwise comporting with this memorandum opinion, the Court would be willing to entertain it." Mem. Op. at 2, 57.

the Court to limit its injunction to five discrete subsections of Subpart E.[2]  The National Treasury

Employees Union, American Federation of Government Employees, National Federation of Federal

Employees, National Association of Agriculture Employees, and Metal Trades Department of the

AFL-CIO ("Unions") oppose the Agencies' motion.

The Court cannot oblige.  After thorough consideration of the Agencies' proposed

order, the Court concludes that the proposal is insufficient to comport with the Memorandum

Opinion.  As a result, the motion must be denied.[3]

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or

amend a judgment no later than ten days after the entry thereof.  Fed. R. Civ. P. 59(e).  A motion to

alter or amend a judgment pursuant to Rule 59(e) is not, however, "simply an opportunity to reargue

facts and theories upon which a court has already ruled."  *New York v. United States*, 880 F. Supp.

37, 38 (D.D.C. 1995) (three-judge panel) (per curiam).  Nor is it an avenue for a "losing party . . .

to raise new issues that could have been raised previously."  *Kattan v. District of Columbia*, 995 F.2d

274, 276 (D.C. Cir. 1993).  "A Rule 59(e) motion is discretionary and need not be granted unless the

district court finds that there is an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice."  *Fox v. Am. Airlines Inc.*,

389 F.3d 1291, 1294 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir.

---

[2]  The Agencies do not seek alteration or amendment of the Court's ruling with respect to 5 C.F.R. § 9701.706(k)(6).

[3]  At the request of the Agencies, the Court has reviewed their motion, held oral argument, and now issues its decision on an expedited basis.  *See* Defendants' Motion to Alter or Amend Judgment ("Defs.' Motion") at 1.

1996) (per curiam)).

"Whether the offending portion of a regulation is severable depends upon the intent of the agency *and* upon whether the remainder of the regulation could function sensibly without the stricken provision." *MD/DC/DE Broadcasters Ass'n v. FCC* ("*MD/DC/DE Broadcasters I*"), 236 F.3d 13, 22 (D.C. Cir.) (citing *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988)), *reh'g denied*, *MD/DC/DE Broadcasters Ass'n v. FCC* ("*MD/DC/DE Broadcasters II*"), 253 F.3d 732 (D.C. Cir. 2001).   In evaluating agency intent, "[s]everance and affirmance of a portion of an administrative regulation is improper if there is 'substantial doubt' that the agency would have adopted the severed portion on its own." *Davis County Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997) (per curiam) (citing *North Carolina v. FERC*, 730 F.2d 790, 795-96 (D.C. Cir. 1984), and *Bell Atl. Tel. Cos. v. FCC*, 24 F.3d 1441, 1447 (D.C. Cir. 1994)).   In evaluating whether the remainder of the regulation could function sensibly, the D.C. Circuit considers, for example, whether severance would "impair the function" of the remaining regulations, *Davis County*, 108 F.3d at 1460, or "sensibly serve the goals for which [the regulation] was designed." *MD/DC/DE Broadcasters II*, 253 F.3d at 734.

## II.  DISCUSSION

This Court's initial opinion rested on three grounds.   First, it found that the Regulations fail to "ensure that employees may . . . bargain collectively" as required by the Homeland Security Act ("HSA") because "[t]he HR System does not lead to enforceable contracts" and "the Secretary retains numerous avenues by which s/he can unilaterally declare contract terms null and void, without prior notice to the Unions or employees and without bargaining or recourse." Mem. Op. at 35; *see* 5 U.S.C. § 9701(b)(4).   Second, it found that the Regulations improperly

assigned an intermediate role of administrative appellate review to the Federal Labor Relations Authority ("FLRA") to determine DHS compliance with the Regulations.  Mem. Op. at 43-46.  Third, it concluded that the Regulations are not "fair" as required by the HSA, due to a new standard limiting the authority of the Merit Systems Protection Board to mitigate penalties.  Mem. Op. at 47-52; *see* 5 U.S.C. § 9701(f)(1)(A).  The Agencies' motion seeks to amend the Court's order only as it relates to the first two grounds, which the Court addresses in turn.

### A.  Collective Bargaining

The Agencies suggest that Regulations' failure to ensure collective bargaining can be remedied by an injunction limited to those provisions of 5 C.F.R. § 9701.506(a)[4] and 5 C.F.R. § 9701.515(d)(5)[5] that would authorize DHS to invalidate terms of a collective bargaining agreement

---

[4] That provision, titled "Impact on existing agreements," provides:

> Any provision of a collective bargaining agreement that is inconsistent with thie part and/or its implementing directives is unenforceable on the effective date of coverage under the applicable subpart or directive.  In accordance with procedures and time limits established by the [Homeland Security Labor Relations Board ("HSLRB")] under § 9701.509, an exclusive representative may appeal to the HSLRB the Department's determination that a provision is unenforceable.  Provisions that are identified by the Department as unenforceable remain unenforceable unless held otherwise by the HSLRB on appeal.  The Secretary or designee, in his or her sole and exclusive discretion, may continue all or part of a particular provision(s) with respect to a specific category or categories of employees and may cancel such continued provisions at any time; such determinations are not precedential.

5 C.F.R. § 9701.506(a).

[5] That provision, titled "Representation rights and duties," provides:

> Provisions in existing collective bargaining agreements are unenforceable if an authorized agency official determines that they are contrary to law, the regulations in this part, Governmentwide rules and regulations, Departmental implementing directives (as provided by § 9701.506) and other policies and

based upon "implementing directives" or "other policies and regulations" issued after the collective bargaining agreement had become effective.  They propose this limitation in an effort to cure the problem that the Regulations, as currently drafted, would allow DHS to void contract terms to which it had already agreed.

### 1. Adequacy of the Agencies' Proposal

The Agencies' proposal falls short because it leaves open other avenues whereby DHS could unilaterally and without recourse disavow lawful contracts.  Prime among these is the last clause of the Management Rights provision at 5 C.F.R. § 9701.511(a)(2), which authorizes DHS managers "to take whatever other actions may be necessary to carry out the Department's mission." The Regulations prohibit bargaining over any decision made under § 9701.511(a)(2), as well as over the procedures management will observe in exercising this authority.  5 C.F.R. § 9701.511(b).  The Regulations contain no limitation that would require management to respect the terms of preexisting collective bargaining agreements in the exercise of this broad authority, and the Agencies offer none. *See* Reply Memorandum in Support of Defendants' Motion to Alter or Amend Judgment ("Defs.' Reply") at 5 ("The effect of these limitations is to grant to management the unilateral right: (1) to take each action encompassed within the management rights regulation without any prior negotiations with the union and (2) to render the matters covered within the regulation nonnegotiable.").

In its Memorandum Opinion, the Court identified 5 C.F.R. § 9701.511(a)(2) as one of the Regulations' troublesome provisions that would authorize DHS to invalidate lawful collective

---

regulations, or Executive orders.

5 C.F.R. § 9701.515(d)(5).

bargaining agreements, although the Agencies' proposed amendment to the Court's Order does not

speak to it:

> The Regulations fail because any collective bargaining negotiations pursuant to its terms are illusory: the Secretary retains numerous avenues by which s/he can unilaterally declare contract terms null and void, without prior notice the Unions or employees and without bargaining or recourse.  Under the Regulations, DHS would have the power to take any matter off the bargaining table simply by issuing department-wide directives, policies, or other regulations.  HSLRB could issue binding Department-wide opinions without regard to the terms of collectively bargained agreements.  *See* [5 C.F.R.] § 9701.509(b).  DHS managers have also reserved the right to "take whatever other actions may be necessary to carry out the Department's mission," *see id.* § 9701.511(a)(2), without bargaining or prior notice, irrespective of the terms of collective bargaining agreements.  These unilateral actions could be appealed to the HSLRB but "[p]rovisions that are identified by the Department as unenforceable remain unenforceable unless held otherwise by the HSLRB on appeal," 5 C.F.R. § 9701.506(a), and the HSLRB is required to give "great deference" to the Secretary's interpretation of management's authority.  *See id.* § 9701.106(a)(2).

> The Comments to the Final Regulations make clear the breadth and depth of this retained right to breach the collectively bargained agreements approved by the Secretary . . . .

> . . . .

> . . . .

> . . . A contract that is not mutually binding is not a contract.  Negotiations that lead to a contract that is not mutually binding are not true negotiations.  A system of "collective bargaining" that permits the unilateral repudiation of agreements by one party is not collective bargaining at all.

Mem. Op. at 35-40 (footnotes omitted).  Rather than merely ask the Court to amend or modify its

judgment, the Agencies effectively ask it to reconsider and disavow this portion of its prior decision.

*See* Defs.' Reply at 6-8.   They argue that § 9701.511(a)(2) merely modifies 5 U.S.C.

§ 7106(a)(2)(D) — a provision of Chapter 71 that allows an agency to take actions "necessary to

-6-

carry out the agency mission during emergencies" — by omitting the last two words, "in emergencies." Defs.' Reply at 6. This power, they explain, is "central to the Department's mission — not just in emergency situations but, more importantly, in order to prepare for and prevent emergencies." *Id.* (quoting 70 Fed. Reg. at 5279). Contesting the notion that this portion of the Regulations grants them unlimited authority, the Agencies argue that they "interpret the phrase 'necessary to carry out the agency's mission' as permitting DHS to take action when required for the agency 'to perform its duties most effectively.' " *Id.* at 7 (citation omitted). They add that this interpretation is controlling and that "the Court is required to afford deference to the Agencies' interpretation of their own regulation." *Id.* (citing *Auer v. Robbins*, 519 U.S. 452, 462 (1997)).

The Court is not persuaded that the Agencies' interpretation adds any material limitation to management's right under the Regulations to ignore negotiated contracts. So interpreted, the Regulations would allow DHS to agree to contract terms and then disavow those terms whenever "necessary" or "required" to "carry out the agency's mission" "most effectively." *See id.* At oral argument, the Agencies fell back upon the familiar mantra that this degree of "flexibility" is needed to protect homeland security and combat terrorism. It bears repeating, however, that the represented employees are *not* on the front line in combating terrorism and that the limited subjects available for bargaining do *not* include operational matters. To be sure, Congress made a judgment that it wanted DHS to have flexibility to discharge its HR duties — but not at the expense of ensuring that employees could engage in collective bargaining. In these circumstances, the deletion of "during emergencies" from the wording of Chapter 71 is no mere modification but, instead, the assertion of full authority to follow or ignore the terms of collective bargaining

agreements almost at will.[6]  Bargaining is an illusion if any resulting agreement is unenforceable, which is the effect of allowing one party to ignore negotiated terms.

### 2. Severability

Sections 9701.511(a)(2) and 9701.511(b) are illustrative, not exhaustive, of the Regulations' provisions that permit or contemplate DHS's unilateral repudiation of preexisting collective bargaining agreements.  The Unions proffer a number of other provisions that they contend must also be voided if the Court limits the scope of its injunction.[7]  However, the Agencies have given no indication that they are willing to consider an injunction broader than that proposed in their motion, and the Court is reluctant to substitute its own judgment for that of the Agencies in selecting which provisions are essential to the mission of DHS.

The Court is left without doubt that the principal goal of the Regulations is management flexibility.  *See, e.g.*, 5 C.F.R. § 9701.501 ("Congress stressed that personnel systems . . . be flexible and contemporary, enabling the Department to rapidly respond to threats to our Nation.").  Indeed, as the Court noted in its original opinion,

> The Regulations emphasize the Department's need to have "flexibility to carry out its vital mission."  *See* 70 Fed. Reg. at 5274; *see also id.* at 5278-79 ("The ability to act quickly is central to the Department's mission . . . . This ability to act quickly is necessary . . . . [The] HR system must provide the flexibility DHS needs . . . ."); *id.* at 5279 ("[N]egotiated procedures have hindered day-to-day operations . . . . [T]he Department's managers and supervisors must be able to make split-second

---

[6] It is true, as the Agencies point out, that an agency's interpretation of ambiguities in its own regulations is normally afforded deference, even where first advanced in a legal brief.  *Auer*, 519 U.S. at 462.  However, the problem here is not an ambiguous regulation but, rather, one that exceeds the authority granted by Congress in the HSA.  *Cf. id.*

[7] The Unions argue that the Court's August 12, 2005, Memorandum Opinion also renders invalid the following provisions: 5 C.F.R. §§ 9701.506(b), 9701.511(a)(2), 9701.511(f), 9701.515(d)(2), 9701.515(d)(3), and 9701.517(a).  Plfs.' Opp. At 32-35.

decisions to deal with operational realities . . . ."); *id.* at 5305 ("[T]hese regulations provide the Department with the flexibility necessary to accomplish its vital mission. In so doing, they also provide that interpretations of these regulations by the Secretary and the Director be accorded great deference."); *id.* ("This section of the regulations recognizes and stresses the fundamental purpose underlying the Homeland Security Act and the statutory mandate to build a flexible personnel system . . . .").

Mem. Op. at 7-8. The Agencies' counsel reiterated this point at oral argument. *See* Preliminary Transcript at 16, lines 3-7 ("The entire purpose or justification for this rule—the entire justification for the statute—was the existing system did not afford sufficient flexibility for the agencies to defend homeland security the way Congress thought [they] needed to defend [it]."). And the Regulations could hardly convey more clearly the Agencies' view that the ability to disregard unilaterally provisions of preexisting collective bargaining agreements is essential to this goal. *See* 70 Fed. Reg. 5272, 5309-10 ("[F]or reasons of homeland security, it is imperative that these regulations and any implementing directives trump provisions of existing collective bargaining agreements if these provisions are inconsistent with the regulations or directives.")

It is in this context that the Court considers whether the enjoined Regulations are severable. "Whether the offending portion of a regulation is severable depends upon the intent of the agency *and* upon whether the remainder of the regulation could function sensibly without the stricken provision." *MD/DC/DE Broadcasters I*, 236 F.3d at 22. Here, the Agencies' intent is not clear, as they said nothing regarding severability in adopting the Regulations. *Cf. id.* ("[T]he Commission clearly intends that the regulation be treated as severable, to the extent possible, for it said so in adopting the regulation."). The question, then, is whether "there is 'substantial doubt' that the agency would have adopted the severed portion on its own." *Davis County*, 108 F.3d at 1459. The Court is left with such doubt. Throughout this litigation, the Agencies have consistently relied

on flexibility as a prime inspiration for the Regulations, and have explicitly stated that the ability to disavow preexisting agreements is "imperative" to attaining their goal. *See* Mem. Op. at 7-8; 70 Fed. Reg. at 5309-10.  Because the Agencies clearly viewed this ability as essential to the Regulations' central purpose, the Court is persuaded that the remainder of the "regulation[s] would not have been passed but for [the] inclusion of the [offending provisions]." *Davis County*, 108 F.3d at 1460 (internal quotation mark omitted; second alteration in original).

Even if the Court were left without substantial doubt as to the Agencies' intent, it would conclude that the offending provisions are so intertwined with the remainder of Subpart E that, if severed, the Subpart could no longer "sensibly serve the goals for which [it was] designed." *MD/DC/DE Broadcasters II*, 253 F.3d at 734; *see also MD/DC/DE Broadcasters I*, 236 F.3d at 22 ("The question for the court, then, is whether the balance of the rule can function independently if shorn of its unconstitutional aspects.").  To bring the Regulations into conformance with the Court's decision, for instance, it would be necessary to enjoin part of the Management Rights provision, clearly central to the fundamental concept of the Regulations.  As demonstrated by the Unions, a number of provisions in Subpart E either permit or contemplate DHS's unilateral repudiation of preexisting collective bargaining agreements.[8]  These scattered provisions focus on a single goal (flexibility) that the Agencies have insisted they cannot achieve without the ability to repudiate DHS bargaining obligations. 70 Fed. Reg. at 5309-10; *see MD/DC/DE Broadcasters II*, 253 F.3d at 734 (evaluating the agency's belief that a particular rule is sufficient to achieve one of its stated goals). The provisions the Agencies concede are partially invalidated by the Court's previous opinion, 5 C.F.R. §§ 9701.506(a) and 9701.515(d)(5), are conceptually intertwined with at least 5 other

---

[8] *See supra* note 7 and accompanying text.

subsections. *See Davis County*, 108 F.3d at 1459 (considering whether invalidated provisions are "intertwined" with or "independent" of otherwise valid provisions). And the invalidation of the offending provisions cannot be said to have had merely a "nominal effect" on the balance of Subpart E. *See id.* (noting, in permitting severance, that the invalid standards had "at most a nominal effect" on the remaining standards). To the contrary, the totality of the record makes clear that the offending provisions are critical to the Agencies' view of their fundamental goal. Although the Court is mindful that, where possible, injunctions should be narrowly tailored to remedy the harm, *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990), under these circumstances, the Court is reluctant to work changes in the Regulations that were not considered by the Agencies. *See MD/DC/DE Broadcasters II*, 253 F.3d at 736. This role is better played by the Agencies in reconsidering their motion or in a renewed rulemaking effort, where they will be free to reconsider their goals and adopt permissible measures to effectuate them. *See id.*

Because the Court finds that the proposed amended judgment is inadequate to comport with its decision with regard to the Agencies' authority unilaterally to repudiate collective bargaining agreements, and because the totality of the offending provisions are not severable from the balance of Subpart E, it must decline to adopt the Agencies' proposed order.[9]

---

[9]The Agencies ask the Court "to exercise its discretion to deny any form of broad injunctive relief that might prevent the DHS from taking action even 'during an emergency' (as authorized by 5 U.S.C. § 7106(a)(2)(D)) as such relief would jeopardize national security and be manifestly contrary to the public interest." Defs.' Reply at 7 n.3. This action is unnecessary because 5 U.S.C. § 7106(a)(2)(D) continues to apply to DHS until and unless it implements regulations that waive Chapter 71. *See* 5 C.F.R. § 9701.503 ("[T]he provisions of 5 U.S.C. § 7101 through § 7135 are waived with respect to [DHS employees] except as otherwise specified in this part.").

### B. HSLRB Appeals

The Regulations would establish the Homeland Security Labor Relations Board ("HSLRB") to investigate, hear, and decide all labor-management disputes concerning negotiability, the duty to bargain, and impasse. As originally envisioned, appeals from an HSLRB decision would be to the FLRA. The Court invalidated this procedure because it represented an improper attempt to expand FLRA jurisdiction beyond Chapter 71. Mem. Op. at 43-46. The Agencies suggest that this problem can be remedied by an injunction limited to three specific provisions in the Regulations that address HSLRB appeals: 5 C.F.R. §§ 9701.508(h), 9701.509(b), and 9701.511(a)(5).

### 1. Adequacy of the Agencies' Proposal

In contrast to the collective bargaining provisions discussed above, there is no disagreement over the scope of the injunction necessary to remedy this problem: The Unions agree that §§ 9701.508(h), 9701.509(b), and 9701.511(a)(5) are the relevant provisions. *See* Plaintiffs' Opposition to Defendants' Motion to Alter or Amend the Judgment ("Pltfs.' Opp.") at 32. The Unions instead argue that the Regulations are not severable as proposed. *Id.* at 16.

### 2. Severability

The Unions note that, in the absence of an appellate process through the FLRA, Unions and employees are left without the opportunity to seek judicial review of HSLRB decisions in the Courts of Appeals under 5 U.S.C. § 7123. Pltfs.' Opp. at 17. Review would be had, if at all, in the District Courts under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, with subsequent review in the Courts of Appeals. *Id.* From this procedural quirk, the Unions assert that Agencies would not have promulgated the Regulations as drafted had they realized that judicial review of HSLRB decisions would be limited or unavailable. The Unions emphasize that the

Agencies specifically contemplated the possibility that the HSA did not give them the power to modify the FLRA's jurisdiction, but disagreed, and provided for FLRA review.  This, they submit, demonstrates the Agencies' concern for assuring judicial review of HSLRB decisions in the Courts of Appeals.  *See* Pltfs.' Opp. at 17-20.

The Agencies' response is twofold.  Starting from 5 C.F.R. § 9701.508(h)(4), which would allow direct appeal of an HSLRB decision if the FLRA does not act quickly to review it,[10] they first contend that the drafters' intentions are clear:  If FLRA review is not available, they would have adopted the Regulations without those provisions.  Defs.' Reply at 23 (citing 5 C.F.R. § 9701.508(h)(4)).  But this is a *non sequitur*.  The flaw in the Agencies' logic is that if FLRA review is not available, neither is access to the Courts of Appeals.  This would leave DHS management with no forum to appeal an adverse HSLRB ruling, because even if APA review is available, an agency cannot appeal its own final agency action.  That the Agencies would *not* have adopted Regulations with uncertain appeal rights and procedures is arguably demonstrated by the very fact that they considered, and rejected, the idea of not mentioning appeal rights in the Regulations.  Instead of silence, the Agencies expressly provided for FLRA and Court of Appeals review.

The second part of the Agencies' response is, however, more compelling.  They next argue that it is clear that the drafters would not have foregone the flexibility sought by the HSA and

---

[10] The proposed 5 C.F.R. § 9701.508(h)(4) provides:

> If the [FLRA] does not issue a final decision within the mandatory time limit established by paragraph (h) of this section, the [FLRA] will be considered to have denied the request for review of the HSLRB's decision, which will constitute a final decision of the [FLRA] and is subject to judicial review in accordance with 5 U.S.C. [§] 7123.

achieved in the balance of the Regulations merely to preserve judicial review over HSLRB decisions in the Courts of Appeals.  Defs.' Reply at 24.  Given the Regulations' overriding goal of flexibility, the Court concludes that this argument is sound and that there is no "substantial doubt" that the Agencies would have adopted the Regulations without provisions for FLRA and appellate review rather than continued to operate essentially within the structure of Chapter 71.  *See Davis County*, 108 F.3d at 1459, 1460.

Of course, "whether the remainder of the regulation[s] could function sensibly without the stricken provision[s]" is a separate question that must be answered in the affirmative to sever the offending provisions.  *MD/DC/DE Broadcasters I*, 236 F.3d at 22.  The Court notes that it would be highly unusual, and perhaps improvident, to render the HSLRB a procedural dead end in which employees would have uncertain appeal rights under the APA and the Agencies would have no appeal rights at all.  But it cannot say that, in view of "the goals for which [the regulations] were designed," such an outcome is senseless when the goal is full management "flexibility."  *MD/DC/DE Broadcasters II*, 253 F.3d at 734.

Thus, the Court concludes that it could enjoin only 5 C.F.R. §§ 9701.508(h), 9701.509(b), and 9701.510(a)(5) and satisfy its concern that the Regulations with those provisions improperly expand FLRA jurisdiction.  However, this conclusion is of little moment because, as explained *supra* in Part II.A, the various provisions permitting or contemplating the unilateral repudiation of collective bargaining agreements are not severable from the balance of Subpart E as proposed by the Agencies.

-14-

### III.  CONCLUSION

Having given the Court's ruling the most narrow of interpretations, the Agencies argue that the remainder of Subpart E is severable from five specific regulations they state were held to be invalid.  The principal flaw in this argument is that the Court disallowed all parts of the Regulations that allow the unilateral repudiation of lawful contracts — whether by issuance of directives, policies and rules, or other means.  Inasmuch as there are significant additional avenues by which DHS would allow itself to ignore its contractual obligations, and the Agencies suggest no modification to those regulatory provisions that would bring the Regulations into conformity with the Court's ruling, the Court declines to modify its August 12, 2005, Memorandum Opinion and Order.  A separate Order accompanies this Memorandum Opinion.

Signed: October 7, 2005                                      _____/s/_____
                                                            ROSEMARY M. COLLYER
                                                            United States District Judge